**Bradley W. BARBER, Plaintiff,**

v.

**DALE COUNTY MENTAL HEALTH CENTER; Sandra B. Cline, in her official capacity as Director of Dale County Mental Health Center, Defendants.**

No. CV–94–A–1173–S.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 23, 1995.

Wendy L. Williams, Cynthia H. Umstead, Birmingham, AL, for plaintiff.

Randall C. Morgan, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

## I. INTRODUCTION

This Cause is before the court on Defendants' Motion for Summary Judgment filed on July 10, 1995. Plaintiff responded to this motion on July 31, 1995. Both parties have submitted briefs and evidentiary material.

This action was filed on September 12, 1994. At that time, the plaintiff was proceeding *pro se;* however, plaintiff is currently represented by counsel. Plaintiff alleged violations by the defendants of multiple federal statutes and constitutional provisions and brought suit pursuant to 42 U.S.C. § 1983. Additionally, plaintiff brought several pendant state law claims. Plaintiff sought compensatory and punitive damages only. No injunctive relief was requested.

In response to the Defendants' Motion to Dismiss, this court issued a Memorandum Opinion and Order on April 11, 1995, dismissing many of the claims, and expressing doubt as to the viability of others.[1] Specifically, as to the plaintiff's § 1983 claims, the court was concerned that plaintiff could not establish that there was state action, in that it was unclear whether defendants acted under color of law, or acted as mere private entities. Additionally, the court expressed some doubt that the plaintiff had alleged a constitutional violation that had been caused by the defendants' actions.

In it previous decision, the court determined that, assuming arguendo that defendant Dr. Sandra Cline ("Dr. Cline") was a state actor, she was entitled to qualified immunity in her individual capacity. Thus, following the April 11 Order addressing the federal claims, only plaintiff's claims against Defendant Wiregrass Mental Health Center

---

1. Despite the court's skepticism as to the viability of the claims, because the plaintiff was proceeding *pro se*, the court exercised extraordinary caution in deciding the motion to dismiss, in order that the plaintiff not be foreclosed from asserting any potentially valid claims.

("Wiregrass"),[2] and Dr. Cline, in her official capacity as Director of Wiregrass remained. The sole remaining federal claims are those involving interference with familial integrity as protected by the due process clause of the Fourteenth Amendment, and a First Amendment freedom of association claim.[3] Also remaining are plaintiff's state law claims which the court did not address in its previous decision.

Having reviewed the submissions of both parties, and viewing them in the light most favorable to the plaintiff, it is clear at this time that this action is due to be dismissed on several grounds. The court finds that there is no evidence that the actions of Dr. Cline, and through her the Center, constitute state action. Additionally, there is no credible evidence that the actions complained of actually caused the deprivation of a constitutional right. Finally, it does not appear that, given the circumstances and the need to balance the rights of the plaintiff and the need to protect the children involved, there was a wrong in this case that amounted to a constitutional deprivation. Accordingly, Defendants' Motion for Summary Judgment on all federal claims is due to be GRANTED. As for plaintiff's state law claims, it appears that these claims were also brought by the plaintiff in a state proceeding and have in fact been dismissed by that court. Therefore, it seems that these claims would be barred under the doctrines of *res judicata* and collateral estoppel. However, because the court has dismissed all claims over which it had original jurisdiction, it need not reach this issue. Rather, the court sees no reason to exercise supplemental jurisdiction over the

state law claims, and accordingly they will be DISMISSED without prejudice.

## FACTS

This case concerns the non-testimonial acts of Dr. Cline in preparation for her testimony in a state court proceeding several years ago. That state proceeding dealt with the visitation and parental rights of the plaintiff in the instant case. In the state action, defendant Cline gave testimony concerning the plaintiff that was unfavorable, and which plaintiff alleges was untrue. According to plaintiff, as a result of the defendant's testimony, plaintiff's relationship with his children was damaged. Plaintiff alleges that this violated his rights to substantive due process as protected by the Fourteenth Amendment and his right to free speech, as protected by the First Amendment.

This court dismissed the plaintiff's case insofar as it concerned the testimony of defendant Cline in the state court proceeding based on witness immunity. Therefore, at this time, the court is solely concerned with the non-testimonial acts alleged by the plaintiff. Specifically, plaintiff alleges that the defendant planted false memories in plaintiff's daughter's mind; that she failed to properly investigate the allegations against him; and that she failed to conduct a proper examination of him prior to giving her testimony. As a result of these acts (or omissions) plaintiff alleges his constitutional rights were violated.

## STANDARD FOR SUMMARY JUDGMENT

Under *Fed.R.Civ.P.* 56(c), summary judgment is proper "if the pleadings, depositions,

---

2. In the complaint, the plaintiff named the Dale County Mental Health Center as a defendant. It appears that the entity is named the Wiregrass Mental Health Center, and the court will refer to it as such.

3. In his complaint the plaintiff also named Amendments Four, Five, Nine as grounds for suit but did not at any point argue as to how these amendments might apply. The court can find no allegations that support a cause of action under these amendments, and as such any claims remaining under them are due to be DISMISSED.

   Additionally, the court specifically did not analyze the plaintiff's First Amendment claim in its

earlier ruling. At this time, it is clear that the plaintiff cannot state a cause of action for a violation of his First Amendment rights to communicate with his children. This is simply not the sort of "speech" protected by the First Amendment. Essentially, the plaintiff's assertions under this Amendment go to his due process claim based on his family rights. Thus, the claims under the First Amendment are due to be DISMISSED, and the court will address the allegations under that claim as they are relevant to the plaintiff's claim under the due process clause of the Fourteenth Amendment.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

### STATE ACTION

■ Section 1983 is not a source of rights, rather it is a means of vindicating federal rights. *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). However, § 1983 only provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law, for the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). In order to establish a claim under § 1983, then, the plaintiff must prove that the defendant acted under the cloak of state authority when she took the alleged actions against him and that the actions deprived plaintiff of a right or rights secured by the Constitution or by federal law. The court will first examine the issue of state action.

■ It must first be noted that there is no contention that the defendant Wiregrass is an official agency of the State or some other governmental subdivision (e.g. Dale County). *See* Plaintiff's Response, pp. 10, *et seq.* The evidence indicates that it is a private entity. However, according to the plaintiff, the defendants in this action were "intricately intertwined with many aspects of state action in this matter to the level that they become [sic] state actors." It has long been the law that private individuals can be sued under § 1983 where their actions are of such a character as to render the private entities state actors. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970). There are several theories under which plaintiff could proceed.

■ One theory is where the powers exercised by the private entity are those that are ordinarily exclusively reserved to the sovereign. *Blum v. Yaretsky,* 457 U.S. 991, 1005, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). In a situation where the private entity essentially performs a public function, it acts in place of the state, and as such can be sued under § 1983. *See also, Evans v. Newton,* 382 U.S. 296, 301, 86 S.Ct. 486, 489, 15 L.Ed.2d 373 (1966) (where a private entity operated a public park in a racially discriminatory manner, the entity's policies constitut-

ed state action). Under a second theory, the state and the private entity may be so joined in an enterprise as to be considered joint participants. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724–25, 81 S.Ct. 856, 861–62, 6 L.Ed.2d 45 (1961). For example, in *Burton*, the private entity was a restaurant that occupied space in a building owned by the parking authority, an agency of the State of Delaware. Under an arrangement between the restaurant and the parking authority, the State received proceeds from the restaurant's business, thereby rendering the coffee shop subject to suit under § 1983. *Id.* at 725, 81 S.Ct. at 862. Finally, a third theory under which a private party's actions can be found to be state action is where that party acts in concert with, with the help of, or at the direction of a public officer. *See, Adickes*, 398 U.S. at 150–52, 90 S.Ct. at 1604–06. Such was the case in *Adickes*, where there were allegations that the lunch counter manager who refused to serve the plaintiff conspired with the police in denying plaintiff of her constitutional rights. *Id.* Any of these theories may support a holding that the defendants can be sued under § 1983 as state actors.

Plaintiff cites three specific connections that the defendants had with the State. First, plaintiff states that the defendant reported the allegations against plaintiff that were made by plaintiff's ex-wife Francia Barber. This certainly would not establish state action, though, in that the defendant, and every other private health care facility in the state, is required by state law to report such allegations. Ala.Code § 26–14–3(a) (1975).[4] The fact that the defendant had an obligation to report the accusations and did so does not make the defendant a state actor. That an entity is subject to state regulation does not make that entity a state actor for the purposes of § 1983. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785; *Rendell–Baker v. Kohn*, 457

U.S. 830, 840–43, 102 S.Ct. 2764, 2770–73, 73 L.Ed.2d 418 (1982).

Second, the plaintiff alleges that the plaintiff's daughter was referred to the defendant by the Department of Human Resources ("DHR"), and that the defendant actively participated in the investigation into the allegations against the plaintiff. As plaintiff states in his brief, "When Dr. Cline, as Director of Wiregrass, accepted a referral from DHR on [plaintiff's daughter] she [Cline] became a state actor in the investigation of the allegations." Additionally, the plaintiff contends that the defendant permitted the DHR to use the Wiregrass facilities in the investigation. Specifically, it appears that a DHR employee came to the Wiregrass facility and made an investigatory video with the plaintiff's daughter.

There is no credible evidence that the defendant was actively involved as an agent of the State or the County. It appears from all the evidence that the defendant Cline became involved in the treatment of plaintiff's daughter based on the defendant's treatment of plaintiff's ex-wife. It is true that defendant Cline did state in her affidavit that "[Plaintiff's daughter] was referred to the facility by Department of Human Resources for therapy beginning in February, 1990." Affidavit of Sandra Cline. However, it is uncontested that Cline had been treating plaintiff's ex-wife for some time prior to the allegations that plaintiff sexually abused his children. According to Dr. Cline's affidavit, and the transcript from the proceeding in state court, Mrs. Barber first reported the allegations to Dr. Cline, based on things that a daughter told her (Mrs. Barber). *See* Affidavit of Sandra Cline, sealed transcript at 139. Mrs. Barber then brought her daughter in to be examined by the doctor. As a result of the examination, Dr. Cline reported to DHR the possibility that plaintiff had abused his daughter. Following this, DHR sent an investigator to interview the daugh-

---

**4.** This section reads:

All hospitals, clinics, ... mental health professionals, or any other person called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect, shall be required to report or cause a report to be made

of the same, orally, either by telephone or direct communication immediately, followed by a written report to a duly constituted authority.

Dr. Cline has indicated that she reported the allegations the same day she received them.

ter. That Dr. Cline, as the girl's psychologist, may or may not have participated in or been present during the interview would not render her a state actor. There is no evidence, other than defendant Cline's affidavit statement regarding DHR's referral, that the state played any role in Dr. Cline's contact with plaintiff's daughter. Accepting that DHR referred plaintiff's daughter to Dr. Cline for treatment, this is not sufficient to render Cline a state actor. All the evidence indicates that this referral was after the allegations were reported to Dr. Cline by Mrs. Barber and after Dr. Cline had made an initial examination of plaintiff's daughter.

Finally, plaintiff claims that the fact that the child's bills for services rendered by Wiregrass were paid for by Medicaid makes the facility and Dr. Cline a state actor. This clearly is not so, for if it were, any facility that accepted Medicaid would automatically be considered a state actor for the purposes of § 1983. Courts, including the Supreme Court, have repeatedly held that receiving government funds does not make that entity a state actor. *See, West v. Atkins*, 487 U.S. 42, 52, n. 10, 108 S.Ct. 2250, 2257, n. 10, 101 L.Ed.2d 40 (1988); *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785; *Rendell–Baker*, 457 U.S. at 840–43, 102 S.Ct. at 2770–73; *Greco v. Orange Mem. Hosp. Corp.*, 513 F.2d 873, 876, n. 3 (5th Cir.1975), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975);[5] *see also, Modaber v. Culpeper Mem. Hosp., Inc.*, 674 F.2d 1023, 1026–27 (4th Cir.1982) (specifically holding that acceptance of medicare and medicaid did not make hospital a state actor).

There being no evidence that the defendants are or were acting in such a manner as they may fairly be said to have been acting under color of state law, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the federal claims brought against them.

## CAUSATION

In addition to showing that the individual or organization sued was in fact a state actor, the plaintiff in a § 1983 action must also show that the acts or omissions of that entity actually caused the deprivation alleged. *Dunwoody Homeowners Assoc., Inc. v. DeKalb County, Georgia*, 887 F.2d 1455, 1459 (11th Cir.1989); *see also, City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171 (11th Cir.1995). In this case, the plaintiff must show that the non-testimonial acts of Dr. Cline resulted in a constitutional deprivation. Taking all the evidence and allegations in the light most favorable to the plaintiff, however, the connection between defendant's actions and the alleged deprivation is simply too tenuous for this court to allow this case to survive summary judgment.

According to the plaintiff, the defendant failed to properly examine him prior to giving her testimony in the visitation rights hearing. Additionally, the plaintiff alleged that the defendant placed false memories in his daughter's mind. In the first instance, it seems to the court that these acts are too intertwined with the defendant's testimony to be the basis for a § 1983 action. As stated above, and more fully discussed in this court's April 11 Opinion, the defendant is entitled to immunity for her testimony in the state court action. The actions complained of by the plaintiff are the basis for the testimony itself.

Additionally, the court has painstakingly reviewed the transcripts from the state court action. In that action, *several* witnesses gave testimony concerning behavior and actions by the plaintiff in this case. Dr. Cline also took the stand and gave testimony regarding plaintiff's daughter—who was at that time the defendant's patient. She also gave expert testimony on her opinion of the nature of the plaintiff's condition.

This court has no doubt that the acts complained of in this case are simply too remote from the alleged constitutional deprivation to form a basis for a cause of action under

**5.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

§ 1983. There is no indication that the state court judge's decision was based primarily on Dr. Cline's testimony. Even if it were, it must be remembered that Dr. Cline is cloaked with immunity for her statements from the witness stand. Based on all the testimony, that judge made a determination. Plaintiff presented no evidence that sufficiently connects the defendant's non-testimonial actions to the alleged deprivation. Thus, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the federal claims brought against them on this basis as well.

## CONSTITUTIONAL VIOLATION

■ Finally, the plaintiff also must show that as a result of the defendant's actions, he suffered a deprivation that rises to the level of a constitutional violation. The plaintiff cannot do so. The Supreme Court has, in several cases, recognized a due process right to family integrity. Supreme Court cases under the due process clause outline an abstract right to what may best be described as family integrity. *See Michael H. v. Gerald D.*, 491 U.S. 110, 123–24, 109 S.Ct. 2333, 2342–43, 105 L.Ed.2d 91 (1989); *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, as the First Circuit has pointed out, this right is by no means absolute. *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir.1993). As that court noted, "The government has a compelling interest in the welfare of children and the relationship between parent and child may be investigated and terminated by a state provided constitutionally adequate procedures are followed." *Id.* (citations omitted).

Assuming that the plaintiff could show state action, which he cannot, and assuming the plaintiff could show causation, which he cannot, the plaintiff would also have to establish that he suffered a constitutional deprivation. On this point as well, the plaintiff's claim fails. As stated above, the state has a compelling interest in the safety of children. Plaintiff alleges that his relationship with his children was damaged as a result of the defendant's actions. However, reviewing the transcript of the termination hearing, it is clear to the court that the plaintiff is actually complaining about the result of that hearing, and the termination of his parental rights. The state proceeding clearly violated no due process rights of the plaintiff. The state held a hearing before a judge. Plaintiff was present and was represented by counsel. Plaintiff had the opportunity to cross examine all witnesses who testified against him, and did so. Plaintiff also had the opportunity to present witnesses on his own behalf, and plaintiff himself testified. Based on that proceeding, the plaintiff's parental rights were terminated. The judge based his ruling on all the evidence, and determined what he believed to be in the best interest of the children. It is not for this court to second guess that judge's ruling, absent gross error or an absence of procedural protection. Neither exists in this instance, nor is there any contention that the state court procedure was in some manner deficient. Plaintiff can therefore show no constitutional violation, as the state's interest in protecting the plaintiff's children outweighs the plaintiff's abstract right to family integrity, so long as there is appropriate procedural due process on the part of the state.

Accordingly, because the court finds that there was no deprivation that rises to the level of a constitutional violation, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the federal claims brought against them.

## STATE LAW CLAIMS

■ As stated above, plaintiff has also brought several claims sounding in state law. The court notes that it is without original jurisdiction to hear any of these claims, and these claims are before the court only by an exercise of this court's supplemental jurisdiction.

Under the terms of the Judicial Improvements Act of 1990, federal courts must exercise supplemental jurisdiction over pendent state claims in all but a few circumstances. *See Yeager v. Norwest Multifamily, Inc.*, 865 F.Supp. 768, 771–72 (M.D.Ala.1994); *Wig-*

*gins v. Philip Morris, Inc.,* 853 F.Supp. 458, 469 (D.D.C.1994); 28 U.S.C. § 1367(a).[6]

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In accordance with the provisions of 28 U.S.C. § 1367(c)(3), this court finds that it may decline to exercise supplemental jurisdiction over plaintiff's state law claims.

The court's rulings in its Memorandum Opinion and Order dispose of all of plaintiff's federal claims against all defendants. Because the court has dismissed all claims over which it has original jurisdiction pursuant to 28 U.S.C. 1367(c)(3) the court declines to exercise supplemental jurisdiction and the state law claims embodied in the complaint will be DISMISSED without prejudice.

## CONCLUSION

For the reasons set forth above, the court finds that Defendants' Motion for Summary Judgment as to all federal claims is due to be granted. The court finds that plaintiff's state law claims are due to be dismissed. The court will enter a separate order consistent with this opinion.

---

**6.** Section 1367(a) reads, "Except as provided in subsections (b) and (c) ... the District Courts shall have supplemental jurisdiction over all other claims that are so related to the claims within such original jurisdiction that they form part of the same case or controversy...."