**Alberta WRIGHT, Plaintiff,**

v.

**DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**No. Civ.A. 97–D–1418–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 14, 1998.

Richard J. Stockham, James H. Wilson, Birmingham, AL, for plaintiff.

Andrew W. Redd, Kim T. Thomas, Montgomery, AL, for defendants.

*MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is Defendants' Motion for Summary Judgment ("Motion"), filed on September 2, 1998. Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment, which the court construes as a Response ("Response"), on September 18, 1998. Defendants filed a Response to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, which the court construes as a Reply ("Reply"), on September 25, 1998. Upon review of the briefs filed by the Parties in this case, the court ordered the Plaintiff to resubmit her Response to cure a number of defects enumerated by the court. Therefore, on October 1, 1998, the Plaintiff filed a Resubmitted Opposition to Defendants' Motion for Summary Judgment, which the court construes as a Second Response ("2d Response"). Defendants filed a Supplemental Response to Plaintiff's Opposition to Motion for Summary Judgment ("2d Reply") on October 8, 1998. After a thorough review of the arguments of counsel, relevant law, and the record as a whole, the court finds that Defendants' Motion for Summary Judgement is due to be granted in part, and the Plaintiff's remaining state law claims are due to be dismissed without prejudice.

## JURISDICTION

The court properly exercises subject matter jurisdiction pursuant to 42 U.S.C. § 2000e–5(f), 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and § 1367(a). The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## FACTUAL BACKGROUND[1]

Plaintiff Alberta Wright ("Wright") is a female correctional officer who has been employed at Staton Correctional Facility since June 1986. (Pl.'s Dep. at 13.) Wright is one of five female correctional officers who work with 21 male correctional officers on first shift. (*Id.* at 22.) She has worked on first shift for approximately 10 years. (*Id.*)

Staton Correctional Facility promulgated a rule, entitled Rule 38, dealing with inmate exposure and/or masturbation. (Pl.'s Dep. at 20–21.) As required by the Department of Corrections, Wright, along with other women officers, documented incidents of inmates masturbating and exposing themselves. (Pl.'s Dep. at 17.)

Wright alleges that Sergeant Leo Allen ("Allen"), one of her supervisors, asked for graphic details of each incident, telling the women to demonstrate the motion of the masturbation. (Pl.'s Compl. at ¶ 11.) Wright further alleges that Allen required her to write incident reports on Rule 38 violations with explicit detail, such as which

1. Defendants dispute several of the factual allegations made by Wright. The following summary construes the facts in the light most favorable to the Plaintiff, the non-moving party, as the court must do when considering Defendants' Motion for Summary Judgment.

hand the prisoner used to masturbate. (Pl.'s Dep. at 92.) Wright contends that these incident reports were left lying around so that others could read them. (*Id.*) Wright also contends that the Defendants did not take appropriate action with respect to inmates who exposed themselves or masturbated in her presence, and as a result of this inaction, "the problem began escalating and getting totally out of hand." (Pl.'s 2d Resp. at 5.)[2]

In October of 1995, Wright complained to another one of her supervisors, Lieutenant Jeffrey Williams ("Williams"), about the difficulty that she was having with inmates and what she felt to be inequity of job assignments. (Pl.'s Dep. at 78–79.) Her chief complaint, with regard to job assignments, was that female officers were assigned more dangerous and stressful duties in the dormitories, while male officers were assigned to less stressful duties in the tower, infirmary, back gate, laundry and rover positions. (Pl.'s Compl. at 2.)

Also in October of 1995, Wright and a male officer counted the number of inmates in a dorm, and there was a miscount of five inmates.[3] (*Id.* at 104.) Wright complained about the incident, arguing that she was basically called a liar in front of her peers, because Williams and Allen chose not to believe her version of why there had been a miscount. (*Id.*) Allen forced her to retrieve a piece of paper on which she recorded the count from the garbage. (*Id.*) However, even though the male officer was also involved in the count, he was not likewise forced to retrieve paper from the garbage. (*Id.*)

On another occasion in October 1995, Wright claims that Williams's arm brushed up against her shoulder and he told her that she had better change her attitude.[4] (*Id.* at 114.) He also stated that he and Allen would be doing her evaluation and that if she did not change her demeanor, her job was in jeopardy. (*Id.* at 116.)

In June of 1996, Wright and the other four female officers on first shift requested in writing a meeting with Warden Charlie Jones ("Jones"). (Pl.'s Dep. at 38–48.) Wright complained that Jones was not taking appropriate action to discipline inmates violating Rule 38. (*Id.* at 55.) According to the Plaintiff, Jones was angry at the meeting and shouted at the female officers. (*Id.* at 47.) Jones waived his pointer stick at the women and told them that they were "in a world of trouble." (*Id.* at 48.) Jones also told the women that "he was not going to tolerate any of the action that they were trying to take, he was not concerned about what they had to say, and he was not concerned with any type of harassment." (Pl.'s 2d Resp. at 4.) Jones ended the meeting by ordering the women out of the office. (Pl.'s Dep. at 48.) As the officers were leaving Jones' office, Wright heard laughter from the male officers remaining inside the meeting. (*Id.* at 49–50.)

Subsequent to the meeting with Jones, Wright entered Lieutenant Robinson's ("Robinson") office with Sergeant Golden ("Golden"). (*Id.* at 129.) Jones observed Wright in Robinson's office and a few minutes later, Williams entered the office and ordered Wright and Golden to return to their posts. (*Id.* at 130.) After Golden left the office, leaving only Wright, Williams closed

2. The court finds that the dates of the allegations contained in this paragraph are not altogether clear but, based on the Plaintiff's deposition testimony, they occurred sometime in 1995 or 1996. Furthermore, the court notes that it specifically ordered the Plaintiff to "provide the court with a chronological statement of facts. This statement of facts may not be submitted in hypothetical form. It must specifically list all of the allegations relied on by the Plaintiff to support her claim of disparate treatment and hostile work environment." (Court's September 25, 1998 Order at 1.) However, the court finds that the Plaintiff has still failed to submit a chronological statement that discusses all of the relevant time periods. Furthermore, the Plaintiff's statement of facts entirely fails to include the allegations contained in the above paragraph. These allegations have been gleaned by the court from an extensive examination of the Plaintiff's deposition testimony and the papers submitted by the Defendants in support of their motion for summary judgment.

3. For the sake of clarity, the court will hereinafter refer to this incident as the "miscount incident."

4. For the sake of clarity, the court will hereinafter refer to this isolated incident as the "touching incident."

the door. (*Id.*) Williams told her that if she did not change her demeanor and "stop this nonsense" he was going to send her home. (*Id.*) Williams noticed Jones walking down the hallway, opened the door, and told Jones that Wright was threatening him. (*Id.* at 131.) Jones told Wright that she would be sent home on leave without pay. (*Id.*) Wright then left the institution for the rest of the day and was charged with four hours of leave without pay. (*Id.*)

On September 30, 1996, Wright filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Wright alleged that the Defendants unlawfully discriminated against her on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). After the EEOC issued her right-to-sue letter on June 27, 1997, Wright filed the instant lawsuit on September 24, 1997. Wright bases her claims against the Defendants on four separate theories: disparate treatment, hostile work environment, invasion of privacy, and breach of contract. Presently before the court is a Motion for Summary Judgment filed by the Defendants in which they argue that the court should dismiss all of the Plaintiff's claims.

## DISCUSSION

1. *180 Day Filing Requirement*

At the outset, Defendants argue that Plaintiff's claims regarding the miscount incident and the touching incident are barred because they did not occur within 180 days of the filing of her EEOC charge.

Title VII permits an aggrieved employee to seek relief in federal court only where the plaintiff (1) has filed timely charges with the EEOC and (2) has received and acted upon the EEOC's statutory notice of right-to-sue. *See* 42 U.S.C. § 2000e–5(f)(1); *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discrimination. *See* 42 U.S.C. § 2000e–5(e). If the plaintiff fails to file before this time elapses, the plaintiff's claim is untimely and is therefore procedurally barred for failure to exhaust her administrative remedies. *See Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1410 (11th Cir.1998).

In this case, Wright filed her EEOC charge on September 30, 1996. It is undisputed that both the miscount incident and the touching incident occurred in October of 1995. Furthermore, the court notes that Wright concedes that these two incidents are time barred. Specifically, Wright states that "[t]he 'mis-count incident,' as Defendants have characterized it in their Brief, and the touching incident with Defendant Williams both occurred in October of 1995 and are outside the 180–day time period. Thus, any claims related to these incidents would be time barred under Title VII." (Pl.'s 2d Resp. at 11.) Therefore, based on the representation and concession by Wright, the court finds that Wright's claims related to the touching and miscount incidents are time barred because they were filed outside of the 180 day time period.[5] Hence, the court will examine the viability of Wright's Title VII claims on the remaining factual allegations.

2. *Title VII Claims*

Defendants contend that the court should dismiss Wright's hostile work environment and disparate treatment claims on the grounds that they cannot be held vicariously liable for the sexual misconduct of the inmates under her charge. Defendants argue that "inmates are not agents of the Department of Corrections." (Def.'s Br. at 12.) Defendants further argue that the nature of Wright's job as a correctional officer is to control "assaults, fights, abusive, vulgar and insubordinate language, nudity, [and] consensual sexual acts," and to ensure compliance with prison rules. (*Id.*) Because Wright is

5. Furthermore, the court notes that the Plaintiff has failed to argue that any of the exceptions to the 180–day filing requirement apply in this case. Therefore, the court finds that it need not address whether these incidents constituted one event among a series of subsequent continuing violations, *see Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992), or any other exception to the 180–day filing requirement.

invested with the power and responsibility to control inmates and to ensure compliance with prison rules, Defendants argue that the inmates' failure to comply with prison rules cannot amount to sexual harassment. (*Id.*)

However, the court finds that Wright has not based her Title VII claims on the inmates' failure to comply with Rule 38. Rather, Wright argues that the Defendants' failure to take disciplinary action against inmates who violated Rule 38 and their action in ridiculing her incident reports submitted for violations of Rule 38 constitute violations of Title VII. The dispositive issue for the court is whether Wright has stated a claim of gender discrimination and harassment on the facts outlined above.

a. *Disparate Treatment Claim*

Under Title VII of the Civil Rights Act of 1964, "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). A claim of disparate treatment alleges that an individual employee received less favorable treatment due to the employee's race, color, sex, religion, or national origin.

A plaintiff may establish a prima facie case of disparate treatment under Title VII by one of three methods: (1) direct evidence of discriminatory intent, (2) statistical proof of disparate treatment, or (3) circumstantial evidence that meets the test set forth in *McDonnell Douglas. See Naia v. Deal,* 13 F.Supp .2d 1369, 1375 (S.D.Ga.1998). In this case, Wright relies solely on the burden-shifting test articulated in *McDonnell Douglas.*

If a plaintiff relies on circumstantial evidence to prove unlawful discrimination, the court follows the test set forth in *McDonnell–Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Under this test, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. *See Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff establishes the prima facie case, the burden shifts to the defendant to produce some "legitimate, nondiscriminatory reason" for the adverse employment decision. *Id.* The defendant is only required to articulate, not prove, a nondiscriminatory reason. Thus, the burden is "exceedingly light." *See Walker v. NationsBank of Florida,* 53 F.3d 1548, 1556 (11th Cir.1995) (citing *Perryman v. Johnson Prod. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983)). If the defendant meets this burden, the presumption raised by the prima facie case "drops from the case." *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1083 (11th Cir.1996). Then, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reasons were not its true motivation, but rather, a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

In order to establish a prima facie case of disparate treatment, the Plaintiff must show that: (1) she is a member of a protected class; (2) an adverse employment action occurred; (3) she and a similarly situated nonprotected person received dissimilar treatment; and (4) sufficient evidence exists to infer a nexus or causal connection between sex and the disparate treatment. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

The court first focuses on whether Wright suffered an adverse employment action by analyzing and determining whether terms or conditions of her employment have been affected. An employment action taken against an employee "is not adverse merely because the employee dislikes it or disagrees with it." *Perryman v. West,* 949 F.Supp. 815, 819 (M.D.Ala.1996). Furthermore, not all employment actions are actionable under Title VII. *See Wu v. Thomas,* 996 F.2d 271, 273 (11th Cir.1993); *see also Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997) (stating that "Title VII was designed to address ultimate employment decisions, not to address every decision made by

employers that arguably might have some tangential effect upon those ultimate decisions. Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating."); *Rabinovitz v. Pena,* 89 F.3d 482, 488 (7th Cir.1996) (finding that to be actionable, the adverse employment action must be "material: [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"). However, loss of salary, benefits, or position are clearly considered by the Eleventh Circuit to be a term or condition of employment. *Id.; cf. Merriweather v. Alabama Dep't of Public Safety,* 17 F.Supp.2d 1260, (M.D.Ala.1998) (finding that negative performance evaluations were not an adverse employment action); *Malladi v. Brown,* 987 F.Supp. 893, 918 (M.D.Ala.1997) (taking keys from an employee does not constitute an adverse employment action); *Murphy v. Yellow Freight Sys. Inc.,* 832 F.Supp. 1543, 1549–51 (N.D.Ga.1993) (finding no adverse employment action when the plaintiff presented evidence of rescheduling, increased monitoring of coworkers and criticism).

The court finds that Wright has failed to prove that she has suffered an adverse employment action. The court finds that the only allegation that even resembles support for an adverse employment action is her allegation that she was assigned more stressful duties than the other male officers on first shift. Specifically, Wright argues that she receives assignments in dormitories, whereas males receive assignments to less dangerous and stressful duties in the tower, infirmary, back gate, laundry and rover positions. However, in Wright's deposition, when she was asked specifically about this allegation, she testified:

Q. Can you name for me the posts at Staton Correctional Facility that you have worked, say during the last two years?

A. All of them except back gate and clerking....

Q. Have you asked or applied to be the back gate officer within the last three years?

A. No, sir. But I would like to add I have worked the back gate as far as relief purposes maybe for a little while, until some detail was handled or something.

Q. So, basically, the only job you haven't worked, at least in part, has been the clerking job?

A. Within that time period, yes, but I have done that, also....

Q. When things were bad, how many days a week or how many days in a month would you be assigned to work in the dorms on average....

A. Approximately four, five times within a month's time, approximately....

Q. And are there other officers, male officers, who worked as many days in the dorms as you worked in the month?

A. I can't say.

Q. Can you think of the names of any officers who consistently worked fewer days in the dorms than you did?

A. Officer Turner....

Q. Okay. Mr. Turner. Who else?

A. I can't recall them all. That's just the one that sticks out in my mind.

Q. But as we sit here today, Mr. Turner is the only one that you can think of who consistently worked fewer days in the dorms than you did?

A. Yes, sir.

(Pl.'s Dep. at 32–35, 80–81.) The court finds that the above extracted testimony disproves, rather than supports, Wright's claim of disparate treatment. The court further finds that Wright, by her own admission, has been assigned to every available officer post at Staton. Thus, Wright cannot argue that she has been completely excluded from those assignments that she considers more desirable.

Therefore, Wright's only remaining argument is that she was assigned to work in the dorms, a post she considers more dangerous

and stressful than other posts, more frequently than the male officers on first shift. However, in her deposition, Wright could only specifically identify one male officer, Officer Turner, among twenty other male officers on first shift, who is assigned less frequently to dorm duty than she. Furthermore, the court finds that the shift rotation charts provided by the Defendants demonstrate that both male and female officers shared the responsibility for working in the dorms. (*See* Def.s' Ex. 12.) Additionally, a close examination of the charts provided by the Defendants demonstrates that David Rollins, a male officer, worked more days in the dorms that did Wright.

Based on the foregoing, the court finds that because Wright has failed to present sufficient evidence of an adverse employment action, her claim of disparate treatment is due to be dismissed as a matter of law. *See Brewer v. Hopper,* No. 97–C–1464–N (M.D.Ala. Oct. 14, 1998) (finding that the Defendants' act of assigning female officer to duty in a dorm was not an adverse employment action which Title VII is intended to remedy).

b. *Hostile Work Environment Claim*

Courts also recognize two types of sexual harassment claims that are actionable under Title VII. *See Fleming v. Boeing Co.,* 120 F.3d 242, 244 (11th Cir.1997). The first type is quid pro quo sexual harassment, which occurs when an "employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands." *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989) (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The second form is sexual harassment that creates a hostile work environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). The Supreme Court has held that "sexual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2283 (citing *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399). In this case, the Plaintiff claims hostile work environment sexual harassment.

In order to establish a prima facie case of hostile work environment, Plaintiff must show: (1) that she is a member of a protected class; (2) that unwelcome harassment occurred, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known of the harassment and failed to take remedial action. *See Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 903–04 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

"[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2275. Whether an environment is "hostile" or "abusive" is determined by looking at all the circumstances. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Factors to consider include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "[S]imple teasing ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher,* 524 U.S. at ——, 118 S.Ct. at 2283 (citation omitted).

With regard to Wright's claim that the Defendants failed to take disciplinary action against inmates who violated Rule 38, the court finds that Wright has failed to produce any evidence to support this claim. When asked by defense counsel in her deposition if she could cite any specific instances where Defendants failed to discipline employees for violations of Rule 38, Wright replied, as follows:

Q. Can you describe for me any instances where you came to [Allen] with a problem concerning inmates masturbating or exposing themselves and that he did not do what you thought he should have?

A. Yes .... Inmate David Johnson.

Q. What occurred with Inmate Johnson that you think was not appropriately handled with—by Leo Allen?

A. Inmate Johnson had been written up not only by myself but several other females. Inmate Johnson constantly exposed himself, harassed the female officer or any female that came within the institution. But the reason I got upset with them with the David Johnson incident is that we had a female come into the institution, Ms. Pat Foster, dealing with I think the SAP programs or what—holding a segment over there at the chapel.

Q. Was she a corrections employee?

A. She is outside support personnel.... My attempt with the supervisor and whatnot with Inmate David Johnson was I kept informing them they needed to get him out of the camp, upgrade his custody, do something more to him.... Inmate David Johnson was over in the chapel area with Ms. Pat Foster, exposing himself while he was in the area.... Incident reports were written up on that particular day....

Q. Was the inmate written a disciplinary for that event?

A. He had—yes, he had to be subdued and whatnot, put in a single cell, locked up.

Q. And was a disciplinary action initiated against him?

A. Right. Eventually, he was shipped.

Q. Who initiated the disciplinary action against Johnson ...?

A. I'm not sure if it was Sergeant Allen or Lieutenant Williams....

Q. You didn't write up a disciplinary for this incident?

A. Not at that incident, because I was off during that time....

Q. Are there any other inmates besides Johnson that you have gone to Leo Allen about?

A. There are, but I cannot recall their names right offhand.

(Pl.'s Dep. at 65–69.) The court finds that Wright has only provided the court with the name of one potential inmate with whom Defendants allegedly failed to take disciplinary action for violating Rule 38. However, even viewing the facts in the light most favorable to Wright, Wright admits that Inmate Johnson was disciplined. She specifically states that Inmate Johnson was subdued, put in a single cell, locked up, and later shipped to a different and higher security prison. If these actions taken by the Defendants against Inmate Johnson do not amount to discipline, the court is not sure what action could.

Furthermore, the court notes that Wright was not even involved in the Inmate Johnson altercation because she was neither at work that day nor did she initiate the disciplinary action taken against him. Thus, because the only evidence submitted by Wright to support her claim of failure to take disciplinary action against violators of Rule 38 is the example of Inmate Johnson, the court finds that Wright's claim is utterly without merit and is due to be dismissed.

The court notes Wright's additional argument that there are other inmates besides Johnson that the Defendants have failed to discipline. However, Wright has not provided the court with any evidence of these allegations. It is axiomatic that a plaintiff cannot rely upon her own conclusions or allegations in defending a motion for summary judgment. *See Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 979–980 (11th Cir.1994); *see also* Fed.R.Civ.P. 56(e) (stating that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party"). Therefore, the court finds that Wright has failed to meet her burden with regard to this allegation, and that summary judgment is due to be granted. *See Brewer,* No. 97–C–1464–N, slip. op. at 12 (M.D.Ala. Oct. 14, 1998) (finding that neither the court nor Title VII is a vehicle for resolving differences of opinion related to

inmate discipline); *Hicks v. Alabama,* No. 97–482–MJ–C (S.D.Ala. Aug. 19, 1998) (finding that plaintiff failed to present sufficient evidence that defendants failed to discipline inmates for violation of Rule 38 or that they in any way condoned or acquiesced in the offensive conduct of the inmates).

Wright's only remaining allegations that could possibly support a claim for hostile work environment consist of Allen's requirement that she write incident reports in explicit detail, Allen's actions of leaving the reports exposed so that others could read them, and the meeting with Jones in June of 1996. After having examined several incident reports written by Wright,[6] the court fails to see any evidence that Wright was required to describe which hand the inmate used to masturbate. Rather, Wright described in a very factual and logical manner which inmates violated Rule 38 and where she observed them committing these violations.

With regard to the meeting held in Jones' office and the allegation that Allen left the incident reports exposed so that others could read them,[7] the court finds that these two remaining allegations do not rise to the level of a hostile work environment. Specifically, the court finds that these two allegations, standing alone, are not sufficiently severe or pervasive to amount to a hostile work environment. *See Ellis v. Wal–Mart Stores, Inc.,* 952 F.Supp. 1522, 1527 (M.D.Ala.1996) (DeMent, J.) (stating that "it is well established that isolated and sporadic incidents of harassment are insufficient to create a hostile work environment"); *see also DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995) (finding that "[a] hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace"). Therefore, the court finds that Wright's claim of hostile work environment is due to be dismissed, as Wright has failed to offer facts which rise to the level of pervasiveness and severity required for Title VII protection.

Having found that Wright fails to state a claim that is actionable under Title VII, only Wright's state law claims for breach of contract and invasion of privacy remain. However, because the federal causes of action that gave rise to this court's jurisdiction are no longer viable, the court declines to exercise jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(33); *Barber v. Dale County Mental Health Ctr.,* 898 F.Supp. 832 (M.D.Ala.1995).

### *Order*

Accordingly, it is CONSIDERED and ORDERED that Defendants' Motion for Summary Judgment be and the same is hereby GRANTED IN PART and Plaintiff's Title VII claims be and the same are hereby DISMISSED. Because the court has dismissed Plaintiff's federal claims and the court chooses not to exercise supplemental jurisdiction over the state law claims, it is further CONSIDERED and ORDERED that Plaintiff's state law claims of invasion of privacy and breach of contract be and the same are hereby DISMISSED without prejudice.

6. The court notes that these incident reports were submitted by the Defendants, and not Wright, in support of their Motion for Summary Judgment. The court notes that Wright has again failed to offer any evidentiary submission to support her allegation that Allen required her to write incident reports in explicit detail.

7. The court again notes that with regard to Wright's allegations against Allen, she has failed to offer specific instances and examples of such conduct. For instance, had Wright argued that Allen repeatedly, over a two year period, supplied copies of the reports to other male officers, the court's current findings might be different. As the record currently stands, however, it does not support a finding of pervasive conduct sufficient to support a hostile work environment claim.