Sheryl S. ANDERSON, Plaintiff,

v.

TWITCHELL–A TYCO INTERNATIONAL LTD.
CO., Defendant.

Civil Action No. 97–D–1146–S.

United States District Court,
M.D. Alabama,
Southern Division.

Oct. 5, 1999.

Banks T. Smith, Dothan, AL, for plaintiff.

Jere C. Segrest, Dothan, AL, Tina Stamps, Columbus, GA, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant's Motion For Summary Judgment ("Motion"), along with Defendant's Brief In Support Of Motion For Summary Judgment ("Def.'s Br."), filed July 13, 1998. On August 31, 1998, Plaintiff filed her Response To Defendant's Motion For Summary Judgment ("Pl.'s Resp."). Defendant submitted its Reply Brief In Support Of Summary Judgment ("Def.'s Repl."), along with five Motions To Strike various portions of evidentiary material submitted by Plaintiff. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds the Defendant's Motion For Summary Judgment is due to be granted in part and denied in part. The court also finds the Defendant's Motions To Strike to are due to be denied as moot.[1]

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964, as amended in 1991). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

1. In its Motions To Strike, Defendant challenges several portions of Plaintiff's evidentiary materials that were submitted in opposition to Defendant's Motion For Summary Judgment. However, the court finds it unnecessary to rely on the challenged portions of Plaintiff's evidentiary submissions. Conse-

quently, the court finds that Defendant's Motions To Strike are due to be denied as moot because the court can adequately address Defendant's Motion For Summary Judgment without considering the challenged evidentiary materials submitted by Plaintiff.

trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

Plaintiff began working for Defendant on February 23, 1987. (Compl. at 1.) Plaintiff worked in various positions "before making a lateral transfer into the Personnel Department as a Personnel Clerk" in February, 1993. (Pl.'s Resp. at 1.) At that point, Plaintiff began working directly under the supervision of Defendant's Personnel Manager, Joseph C. Blake ("Blake"). (*Id.*) Plaintiff appeared to be a good employee for Defendant[2] and she states that "her work situation was fine up until January 29, 1997." (*Id.* at 15.)

The problem that Plaintiff experienced on January 29, 1997 arose out of a business trip she had taken back in November, 1996. Upon Defendant's request, Plaintiff, along with one male and two female employees of Defendant, went to Atlanta, Georgia for an automated data processing

2. The only negative documentation found in Plaintiff's personnel file was a "write-up" that Plaintiff had received in August, 1988 for allegedly gossiping. (Pl.'s Resp. at 1; Anderson Dep. at 33–34.) Aside from this minor repri- mand, Plaintiff's file contained only positive documents, including a comment from Blake stating that Plaintiff was doing an excellent job. (Pl.'s Exs. 8, 9, 10, 11, 15, 17, 18, 19, 20, 21, 22, and 27.)

("ADP") training course. (Anderson Dep. at 42.) The group left on a Sunday, attended the training course for approximately four and one-half hours on Monday, and traveled for three hours until they returned home on Monday evening. (*Id.*; Blake Aff. ¶ 9.) On Tuesday, Plaintiff "completed a travel pay form requesting that she be paid for certain hours worked and certain travel time." (Def.'s Br. at 7; Compl. at 2.) Plaintiff "claimed three hours travel pay for Sunday, and she claimed eleven hours for Monday (eight hours work time plus three hours travel time)." (Def.'s Br. at 7.) After Plaintiff submitted her claims to Blake, he approved the three hours travel pay for Sunday, but only approved payment for eight hours on Monday because "he felt that the [three additional travel pay] hours claimed [by Plaintiff] were excessive, pursuant to the Department of Labor policy guide concerning travel pay." (Def.'s Br. at 7.) In fact, none of the employees who went to the ADP training course received the additional three hours of travel pay. (Anderson Dep. at 42.) When Blake explained to Plaintiff his reasoning for partially denying her claims, the issue of Plaintiff's disputed travel pay was temporarily resolved. (Blake Aff. ¶ 9; Anderson Dep. at 45–47.)

However, on January 29, 1997, "Plaintiff inadvertently saw a business trip travel pay form for a Mr. Frank Hodges" showing that Hodges had been approved for twelve hours pay for work and travel to a computer training seminar in Atlanta, Georgia. (Compl. at 2; Anderson Dep. at 48–49; Def.'s Br. at 8.) Although Mr. Hodges' travel pay had been approved by another supervisor,[3] Plaintiff showed Mr. Hodges' travel pay form to her supervisor, Blake, and asked him why "[Hodges'] travel time was approved, and [hers] had been denied." (Anderson Dep. at 49.) Plaintiff contends that her question "angered Mr. Blake and that her workplace became very hostile" thereafter. (Pl.'s Resp. at 15.) However, Blake looked into the matter, conferred with the supervisor who approved Mr. Hodges' travel pay, and determined that Defendant's travel pay policy was being interpreted in different ways by different supervisors. (Def.'s Br. at 8.) Therefore, Blake decided to pay Plaintiff the disputed travel pay she claimed for her trip to Atlanta and then "review the travel pay policy with all supervisors to achieve consistency within all departments." (Def.'s Br. at 8.) Although the evidence is not completely clear, the court notes that Plaintiff did receive payment for most, if not all, of the three hours travel pay in dispute.[4]

Nevertheless, Plaintiff states that after she complained to Blake about the travel pay issue, Blake became very upset with

---

3. The court notes that John Fiedorowicz was the supervisor who approved Frank Hodges' travel pay claims. (Anderson Dep. at 49.) The court further notes that John Fiedorowicz was the male employee who accompanied Plaintiff to the ADP training course in Atlanta. (*Id.* at 42.) Although the Parties do not clearly address the issue, the court finds interesting the fact that Fiedorowicz, like Plaintiff, received no additional travel pay for his trip to Atlanta, but later approved Frank Hodges' additional travel pay claim for an allegedly similar trip. (*Id.*) The court will address this matter in greater detail subsequently in this opinion.

4. Plaintiff contends that she never received payment for the full three hours of travel pay in dispute. (Compl. at 2.) However, Plaintiff's arguments in this regard are disjointed and contradictory. For instance, in her complaint, Plaintiff contends that she received payment for two and one-half hours of the three hours travel pay in dispute. (Compl. at 2.) In her Response, Plaintiff asserts that she "was ultimately paid a small amount of the travel time she claimed, not the total amount." (Pl.'s Resp. at 22.) Finally, in her Deposition, Plaintiff admitted that she did not know whether she had been paid in full for her disputed travel time claim. (Anderson Dep. at 52.)

To the contrary, Defendant submits persuasive evidence showing that Plaintiff was indeed paid the full amount of travel pay in dispute. (Def.'s Br. at 9; Def.'s Repl. at 18; Blake Aff. ¶ 11.) Therefore, after considering the evidence in light most favorable the Plaintiff, the court concludes that Plaintiff has received most, if not all, of the disputed travel pay.

her. (Pl.'s Resp. at 15.) Further, Plaintiff asserts that her "workplace became very hostile for the next two days" after making her complaint to Blake. (Id.) Finally, on January 31, 1997, Blake called Plaintiff into his office and informed her that her employment was being terminated "because of lack of job growth and dissatisfaction with her performance." (Def.'s Br. at 6.)

On February 4, 1997, Plaintiff filed a Complaint with the Equal Employment Opportunities Commission ("EEOC"), received her right to sue letter from the EEOC on May 1, 1997, and commenced the above styled action by filing a Complaint with this court on July 25, 1997. In her Complaint, Plaintiff alleges that she was discriminated against on the basis of her gender and asserts the following claims against Defendant: (1) disparate treatment regarding disputed travel pay; (2) discriminatory discharge; (3) retaliation; (4) disparate treatment regarding events that transpired prior to 1997; (5) pattern and practice of sex discrimination; (6) hostile work environment; and (7) damages. Defendant moves for summary judgment on all of Plaintiff's claims. The court now addresses Defendant's Motion.

## DISCUSSION

### I. Disparate Treatment Regarding Disputed Travel Pay

█ Plaintiff first alleges that she was subjected to disparate treatment because, unlike her male colleague, Mr. Hodges, she did not receive the entire amount of business travel pay she had claimed for her trip to Atlanta in November, 1996. (Compl. at 2.) At the outset, the court notes that the primary issue in a gender based disparate treatment claim is whether the employer intentionally discriminated against the employee because of her gender. See U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Discriminatory intent can be established through either direct or circumstantial evidence. See id. at 714 n. 3, 103 S.Ct. 1478. Because the distinction between direct and circumstantial evidence is a critical one,[5] the court must first determine whether Plaintiff produces direct evidence or circumstantial evidence of discrimination.

█ Plaintiff contends that she has submitted direct evidence of discrimination in the form of a statement allegedly made by her supervisor, Blake. (Pl.'s Resp. at 14–15.) Plaintiff avers that the discriminatory statement was made in 1994 when Blake sent her to the "Alabama State Employment Office to look at screening applicants for the extrusion department." (Anderson Dep. at 96.) Blake allegedly instructed Plaintiff to make notes on the appearance of each applicant because there was an "overload of black people in the [extrusion] department" and because Blake was looking for "male[s] between the [ages] of 18 and 30." (Id. at 97.)[6] Plaintiff argues that this statement allegedly made by Blake in 1994 constitutes direct evidence of

---

**5.** The Eleventh Circuit recently discussed the important distinction between direct and circumstantial evidence in the following manner:

> Direct evidence is evidence which, if believed, proves the existence of the fact in issue without inference or presumption. So, direct evidence of discrimination is powerful evidence capable of making out a prima facie case essentially by itself. This court has marked severe limits for the kind of language to be treated as direct evidence of discrimination. To give great weight—for example, to say a few isolated words "make all the difference"—to language that is, at best, only circumstantial evidence blurs the important distinction between circumstantial evidence and direct evidence for prima facie cases. Blurring this distinction adds hurtful uncertainty to the law. Language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case.

> Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir.1998) (citations omitted).

**6.** Plaintiff vaguely asserts that Blake made this statement despite having been advised by an employee of the Alabama State Employment Service to interview females for the extrusion department position. (Anderson Dep. at 97.)

his intent to discriminate against her in 1997. (Pl.'s Resp. at 14–15.)

On the other hand, Defendant denies that Blake even made the statement, "but even assuming for summary judgment purposes that Mr. Blake did make this statement in 1994, this alleged statement is clearly not direct evidence under the decisions in the Eleventh Circuit." (Def.'s Repl. at 6.) The court agrees.

The Eleventh Circuit recently addressed a similar issue concerning direct evidence of discrimination in the case of *Burrell v. Board of Trustees of Ga. Military College*, 125 F.3d 1390 (11th Cir.1997). In *Burrell*, the plaintiff brought a gender discrimination claim and argued that her supervisor's discriminatory statement against women was tantamount to direct evidence of discrimination. *Id.* at 1393. The plaintiff in *Burrell* wanted an executive vice president position and when she discussed this with her supervisor, "he responded that he wanted to hire a man for the position because too many women [already] filled ... officer positions." *Id.* Approximately one year later, the plaintiff was fired by the same supervisor who allegedly made the discriminatory statement. *Id.* Despite the plaintiff's argument that her supervisor's statement constituted direct evidence of discrimination, the *Burrell* court held otherwise:

'[W]hen the employer ... makes a specific comment in relation to a specific job or promotion, we believe that the value of that comment as direct evidence is limited to a challenge to the specific job or employment decision. Still, a comment, which was narrowly tailored to a particular event, might constitute some evidence of discrimination for a case based on a separate event, the statement, however, must then be seen not as direct evidence of discrimination, but as circumstantial evidence of discrimination.'

*Id.* at 1394 n. 7. This court finds that *Burrell* directly governs the issue sub judice. The court notes that Blake's alleged discriminatory statement, made in 1994, related to applications for a position in Defendant's extrusion department. (Anderson Dep. at 96.) On the other hand, the events giving rise to Plaintiff's disparate treatment claim occurred in 1997 and involved a disputed travel claim within Defendant's personnel department. (Compl. at 2.) These facts alone justify a finding that Blake's alleged statement does not constitute direct evidence of discrimination. *See Jones*, 151 F.3d at 1323–24 (holding that a supervisor's discriminatory statements that "were not associated with the events of the day leading to [p]laintiff's discharge" and were, in fact, "remote from the main events" giving rise to plaintiff's Title VII lawsuit did not constitute direct evidence of discrimination).

Furthermore, the Eleventh Circuit's holding in *Burrell* leads this court to the conclusion that statements concerning a specific employment decision—such as Blake's alleged statement made in 1994—do not constitute direct evidence of discrimination in a case based on a separate event—such as Plaintiff's instant action which arises out of events that transpired in 1997. *See* 125 F.3d at 1394 n. 7. Accordingly, the court finds that Blake's alleged statement does not constitute direct evidence of discrimination. Therefore, the court now turns to an analysis of whether Plaintiff can establish a circumstantial case under the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[7]

Under this framework, the Title VII plaintiff has the initial burden of establish-

7. Because Blake's alleged statement is the only evidence that Plaintiff proffers as direct discrimination, (Pl.'s Resp. at 14–15), the court will address all of her discrimination claims under the *McDonnell Douglas* frame- work set forth below, whereby a Title VII plaintiff may proceed, without direct evidence, by proffering circumstantial evidence of discrimination. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

ing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff meets this burden, he or she is entitled to a legal presumption that the defendant acted with discriminatory intent. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. 1817. However, if the plaintiff is unable to establish a prima facie case of discrimination, summary judgment is due to be granted in favor of the defendant. *See Eldridge v. Morrison*, 970 F.Supp. 928, 938 (M.D.Ala. 1996).

■ In order to establish a prima facie case of disparate treatment on the basis of gender, a plaintiff must show that: (1) she is a member of a protected class; (2) an adverse employment action occurred; (3) she and a similarly situated person, outside of her protected class, received dissimilar treatment; and (4) sufficient evidence exists to infer a nexus or causal connection between sex and the disparate treatment. *See Wright v. Dep't of Corrections*, 31 F.Supp.2d 1336, 1342 (M.D.Ala. 1998) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). For the reasons discussed herein, the court finds that Plaintiff fails to show the third element, and, accordingly, the court finds that Plaintiff fails to establish a prima facie case of disparate treatment.

Initially, the court notes that Plaintiff has the burden of proving that a similarly situated person, not in her protected class, received dissimilar treatment than did Plaintiff. *See Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir.1989). To carry this burden, Plaintiff must show that she and the nonprotected person "are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). As explained in *Malladi v. Brown*, 987 F.Supp. 893, (M.D.Ala.1997):

> To be deemed 'similarly-situated,' the individual with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are [treated or] disciplined in different ways. The simple allegation that there was someone else, without an adequate showing that she is similarly-situated in all relevant respects, fails to make out a prima-facie case.

*Id.* at 909–10 (citations omitted). "In addition, '[P]laintiff must show that employees are treated differently for nearly identical conduct.'" *Eldridge*, 970 F.Supp. at 934 (quoting *Cabiness v. YKK (USA), Inc.*, 859 F.Supp. 582 (M.D.Ga.1994)).

■ Plaintiff attempts to meet this burden by showing that her colleague, Mr. Hodges, was paid full travel time for a business trip he took to Atlanta, Georgia in 1997. (Compl. at 2.) Plaintiff claims that because she was denied full travel time, in 1996, for a business trip taken "under almost identical circumstances" as Mr. Hodges' trip, she was treated differently than a person outside of her protected class. (Pl.'s Resp. at 10.) The court finds, however, that Plaintiff fails to establish how these "circumstances" were "almost identical."

Plaintiff admits that she and Mr. Hodges worked for different supervisors in separate departments. (Anderson Dep. at 41, 49.) Furthermore, Plaintiff admits that she has no personal knowledge about Mr. Hodges' trip to Atlanta, outside of the fact that he received eight hours of work pay and four hours of travel pay as compensation for his trip. (Anderson Dep. 49–50.) For all the court knows, Mr. Hodges could have very well worked eight hours in Atlanta and then traveled four hours back to his home. This would certainly be different than Plaintiff's trip in which she at-

tended the ADP training course for approximately four and one-half hours and then traveled for three hours back to her home. (*Id.;* Blake Aff. ¶ 9.) However, the court cannot make such a determination because Plaintiff has failed to provide evidence showing that she worked and traveled the same amount of time as did Mr. Hodges. Finally, Plaintiff admits that Blake was not the supervisor who authorized Mr. Hodges' travel pay, but rather, another supervisor in a different department made the authorization. (Anderson Dep. at 49.) Interestingly, the supervisor who authorized Mr. Hodges' travel pay, Mr. John Fiedorowicz, was the same supervisor who accompanied Plaintiff on her trip to Atlanta and who, like Plaintiff, received no additional travel pay for the trip. (Anderson Dep. at 42.) This fact not only shows that Mr. Hodges and Plaintiff were not similarly situated, but also mitigates against Plaintiff's allegation of intentional discrimination. *See Brown v. American*

*Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir.1991) (holding that a business decision that affects a member of a nonprotected group in the same way as a member of a protected group is generally not discriminatory). Based on the foregoing, the court finds that Plaintiff has not carried her burden of proving that Mr. Hodges was similarly situated to her in all relevant respects. Therefore, the court finds that Plaintiff has failed to establish a prima facie case of disparate treatment.[8] Accordingly, the court finds that summary judgment is due to be granted as to Plaintiff's claim of disparate treatment.[9]

## II. Discriminatory Discharge

 Because Plaintiff's discriminatory discharge claim is premised upon her disparate treatment claim, (Pl.'s Resp. at 15), which she failed to establish, the court finds that Plaintiff's discriminatory discharge claim is due to be dismissed as a matter of law.[10]

8. The court also notes that Plaintiff has not produced sufficient evidence to show that she suffered an adverse employment action. As discussed in note 4, supra, Plaintiff received most, if not all, of the disputed travel pay associated with her disparate treatment claim. This fact further diminishes Plaintiff's ability to establish a prima facie case. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131–32 (11th Cir.1984) (holding that Plaintiff must prove all four elements of prima facie case in order to succeed on disparate treatment claim). However, because the court finds that Plaintiff fails to establish the similarly situated element of her prima facie case, further discussion regarding adverse employment action is unnecessary.

9. The court notes that, in an effort to prove disparate treatment without first establishing a prima facie case, Plaintiff submits broad sweeping allegations of discriminatory events that have occurred during her employment with Defendant. (Pl.'s Resp. at 3–5.) Most of these allegations appear to be based on hearsay statements and do not even involve Plaintiff. (*Id.*) However, even if taken as true, these allegations are irrelevant because Plaintiff has failed to establish a prima facie case. *See Hicks v. State of Alabama*, 45 F.Supp.2d 921, 933–34 (S.D.Ala.1998); *see also Jones v. Bessemer Carraway Med. Cntr.*, 151 F.3d 1321,

1323 n. 11 (11th Cir.1998) (holding that evidence of "racial animus may be significant evidence of pretext *once* a plaintiff has set out the prima facie case") (emphasis added); *Eldridge*, 970 F.Supp. 928, 938 n. 14 (M.D.Ala. 1996) (finding that "vague and conclusory" allegations of gender discrimination "cannot survive summary judgment" when plaintiff fails to establish a prima facie case). Therefore, the court need not address these other allegations of discrimination.

10. Although the Parties do not clearly or accurately articulate their arguments regarding the discriminatory discharge claim, the court notes that Plaintiff has the burden to prove the following prima facie elements in order to survive summary judgment on this claim: (1) that she is a member of a protected class; (2) that she was qualified for the job from which she was discharged; (3) that she was discharged; and (4) that her former position was filled by someone not in her protected class, that she was terminated while others having comparable or lesser qualifications and not in her protected class were retained, or that she was subject to a different application of work or disciplinary rules. *See Givhan v. Electronic Engineers, Inc.*, 4 F.Supp.2d 1331, 1339–40 (M.D.Ala.1998). For three reasons, the court finds that Plaintiff has failed to prove the fourth prima facie element. First, Plaintiff

## III. Retaliation

██ Plaintiff contends that she was wrongfully terminated by Defendant in "retaliation for complaining of sexually disparate treatment, in violation of Title VII...." (Compl. at 2.) The court notes that this retaliation claim appears to be the gravamen of Plaintiff's Complaint and her unsuccessful disparate treatment claim merely serves as a basis for Plaintiff's primary charge of retaliation. (Pl.'s Resp. at 15.) Furthermore, the court notes that "[t]o recover for retaliation, a plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest,' so long as [s]he had a reasonable good faith belief that the discrimination existed." *Eldridge*, 970 F.Supp. at 938–39 (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir.1989)); *see also Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir.1999) ("Under Title VII, it is well established that an employee need not prove the underlying claim of discrimination in order to establish a retaliation claim.") Because Plaintiff testified that "her complaint to Blake as to why a male employee would be paid for the [same] travel time that ... she had been denied," the court finds that, for the purposes of this Motion, Plaintiff has produced sufficient evidence to show that her protest was based on a reasonable, good faith belief that gender discrimi-

nation actually existed.[11] Having cleared this hurdle, Plaintiff's retaliation claim can stand alone despite the fact that she has failed to establish her underlying claim of disparate treatment. *See id.*

██ Now that the court has determined that Plaintiff may proceed on her retaliation claim, she must establish a prima facie case by showing the following: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events. *See id.* at 868. Regarding the first element, the Eleventh Circuit has held that a plaintiff engages in "statutorily protected activity" when he or she protests an employer's conduct, if the employee demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir.1997). Furthermore, "the protection afforded by [Title VII] ... is not limited to individuals who have filed formal complaints, but extends as well to those ... who informally voice complaints to their superiors...." *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989). As discussed above, the court finds that Plaintiff has demonstrated a good faith, reasonable belief that Blake unlawfully discriminated against her with

does not contest the fact that her former position was filled by another female shortly after Plaintiff's termination. (Pl.'s Resp. at 14.) Second, Plaintiff does not even contend that she was terminated while others having comparable or lesser qualifications and not in her protected class were retained. Finally, Plaintiff does contend, in her disparate treatment claim, that she was subjected to a different application of work rules. (Compl. at 2.) However, as discussed in the previous section, Plaintiff has failed to establish a prima facie case of disparate treatment. *See supra* § I. Accordingly, Plaintiff cannot establish a prima facie case of discriminatory discharge and summary judgment is due to be granted as to this claim.

11. Although Defendant claims that Plaintiff cannot "demonstrate that she had a good faith, reasonable belief" that discrimination

existed because the denial of her travel pay claim was not unlawful, (Def.'s Br. at 23–24), the court, once again, notes that Plaintiff is not required to prove the unlawfulness of her underlying discrimination claim to succeed on her charge of retaliation. *See Taylor*, 175 F.3d at 869. Further, Defendant asserts that "Plaintiff did not complain [to Blake] ... that she thought male employees were treated differently." (Def.'s Br. at 23.) However, Plaintiff directly contradicts this assertion in her deposition by testifying that she did indeed complain to Blake about Defendant's disparate treatment of men and women. (Anderson Dep. at 41 & 140.) Therefore, in viewing the evidence in light most favorable to Plaintiff, the court finds that, for the purposes of this Motion, she has produced sufficient evidence to show that she had a reasonable, good faith belief that discrimination actually existed.

regard to her claim for travel pay. *See supra* note 11 and accompanying text. Consequently, the court finds that Plaintiff has satisfied the first prima facie element of her retaliation claim.[12]

Further, the court finds that Plaintiff has satisfied the second prima facie element of her retaliation claim. The undisputed evidence clearly shows that Plaintiff was terminated by Blake just two days after she had complained to him about the travel pay issue. (Def.'s Br. at 6.) Because firing Plaintiff was an adverse employment action, *see Eldridge,* 970 F.Supp. at 939, the court finds that the second prima facie element has been established.[13]

The court also finds that Plaintiff has established the third prima facie element by showing a causal connection between her complaint to Blake regarding the travel pay issue and her termination that occurred two days later. "[I]n order to establish the requisite 'causal link' required as part of a prima facie case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.' At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Eldridge,* 970 F.Supp. at 939 (quoting *Goldsmith v. City of Atmore,* 996 F.2d 1155 (11th Cir.1993)). Furthermore, " '[t]he causal link requirement has been interpreted broadly' and the standard for establishing causation is a 'slight' one." *Merriweather v. Alabama Department of Public Safety,* 17 F.Supp.2d 1260, 1273, 1277 (M.D.Ala.1998) (citing

*Meeks v. Computer Associates Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994)).

Defendant contends that Plaintiff has failed to establish the requisite causal connection because Blake had allegedly decided to terminate Plaintiff's employment before she complained to him about the travel pay incident. (Def.'s Br. at 9.) However, Defendant offers no clear evidence or documentation to support this contention outside of his lone statement that he "made the decision to terminate Ms. Anderson's, [Plaintiff's], employment prior to [their] discussion in January, 1997 concerning travel pay." (Blake Dep. at 6.) Furthermore, this contention is not undisputed, as Defendant would have the court believe, because Plaintiff explicitly asserts that she was terminated "in retaliation for complaining of sexually disparate treatment" regarding the disputed travel pay. (Compl. at 2; Pl.'s Resp. at 15.)

In contrast, it is undisputed that two days after Plaintiff complained to Blake about the disputed travel pay, Blake fired her for reasons that are not documented in any record. (Pl.'s Resp. at 6.) Therefore, the court finds that the close proximity in time between Plaintiff's complaint about the travel pay and her termination is sufficient to establish a causal connection between the protected activity and her termination. *See Donnellon v. Fruehauf,* 794 F.2d 598, 600–601 (11th Cir.1986) (holding that the plaintiff had established the "causal link" prong of the prima facie case, where her discharge occurred one month after filing a charge with the EEOC: "The short period of time ... between the filing

12. Despite Defendant's arguments to the contrary, (Def.'s Br. at 23), the court concludes that "the allegations and record ... indicate that [Plaintiff's] belief [that Blake unlawfully discriminated against her], though [ ] mistaken, was objectively reasonable." *Little,* 103 F.3d. at 960. Therefore, for the purposes of the instant Motion, the court finds that Plaintiff has satisfied the first prima facie element of her retaliation claim.

13. Defendant argues that "[b]ecause Ms. Anderson, [Plaintiff], was paid for the disput-

ed travel pay, there was no adverse employment action concerning the travel pay." (Def.'s Br. at 24.) While this may be true, it does not change the undisputed fact that Plaintiff's employment was terminated two days after complaining about the travel pay. (*Id.* at 6.) Because termination is certainly an adverse employment action, the court finds no merit in Defendant's argument that Plaintiff suffered no adverse employment action. *See Eldridge,* 970 F.Supp. at 939

of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation"). Therefore, the court concludes that Plaintiff has sufficiently established the third element of her prima facie case of retaliation.

Once a Title VII plaintiff establishes a prima facie case, "an inference arises that the challenged action was motivated by a discriminatory intent." *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1267 (11th Cir.1999) (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir.1989)). "The burden then shifts to the employer to 'articulate' a legitimate, non-discriminatory reason for its action." *Id.* (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). The employer's burden at this point is one of production and not persuasion. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Moreover, the Eleventh Circuit has stated that this burden is an "exceedingly light" burden. *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). Thus, the court must now determine whether Defendant has produced enough evidence to articulate a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Defendant proffers three primary reasons for terminating Plaintiff's employment: (1) insubordination toward Blake, her supervisor; (2) lack of job growth; and (3) Blake's dissatisfaction with Plaintiff's performance. (Def.'s Br. at 3.) In support of these reasons for Plaintiff's termination, Defendant produces the following evidence: (1) "Mr. Blake had to talk to [Plaintiff] on at least three occasions about his concerns about her talking too much and being on the telephone too much on personal telephone calls." (Def.'s Br. at 3; Blake Aff. ¶ 5); (2) "Other employees also complained to Mr. Blake that [Plaintiff] spent too much time talking to them, and, as a result, disrupted their work." (Blake Aff. ¶ 6; Thomas Dep. at 8; McArdle Dep.

at 14–16); (3) Plaintiff "seemed at times to avoid certain tasks, and would even come into Mr. Blake's office in the afternoon on occasion and tell him not to give her any more work to do that day because she had too much work to do." (Def.'s Br. at 4; Smith Aff. ¶ 6); (4) "Mr. Blake also sensed a significant change in Ms. Anderson's, [Plaintiff's] attitude during the last few months of her employment with [Defendant], and he felt that she was discourteous and disrespectful to him." (Def.'s Br. at 5; Blake Aff. ¶ 6); (5) After discussing a "stop smoking" project with Mr. Blake, Plaintiff made a "disrespectful and insubordinate statement to [Mr. Blake] that caused him to realize that he 'could no longer work with [Plaintiff].'" [14] (Def.'s Br. at 5–6; Blake Dep. ¶ 7.)

In sum, Defendant contends that "the decision to terminate [Plaintiff's] employment had absolutely nothing to do with [Plaintiff's] sex nor did it have anything to do with her inquiry concerning travel pay, but instead, the decision to terminate her employment was based entirely upon her insubordinate attitude and lack of job growth and dissatisfaction with her performance." (Def.'s Br. at 11.) After careful consideration of Defendant's proffered evidence set forth above, the court finds that Defendant has satisfied its "exceedingly light" burden of producing evidence of legitimate non-discriminatory reasons for Plaintiff's termination. *Perryman,* 698 F.2d at 1142.

"Once the employer satisfies [its] burden of production, the employee then has the burden of persuading the court that the proffered reason[s] for the employment decision [are] a pretext for intentional discrimination." *Jordan v. Wilson,* 649 F.Supp. 1038, 1054 (M.D.Ala.1986) (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). "Plaintiff has the opportunity to come forward with evidence including the previously produced evidence es-

14. Defendant contends that when Mr. Blake gave Plaintiff instructions concerning the "stop smoking" project, Plaintiff "looked at Mr. Blake with a very cold stare and pointed her finger at him and stated 'Geoff Pitman, [Defendant's Vice President of Operations], told you to do that.'" (Def.'s Br. at 5–6.)

tablishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). Plaintiff's "burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext.... The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts [relating to the issue of pretext] at issue." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir. 1993).

■ Plaintiff's argument of pretext is summed up in the following statement: "[Blake's] termination of this Plaintiff without a single written supporting document two days after she complained to him about [disparate treatment] ... creates grave doubt as to his motivation and sincerity in terminating this Plaintiff." (Pl.'s Resp. at 24.) The court agrees.

The Eleventh Circuit recently held that where "an employer's stated reasons for an employment decision involve the employee's performance, but there is no supporting documentation, an inference arises that the reasons stated are simply a pretext for unlawful activity." *Everett v. Lake Martin Area United Way*, 46 F.Supp.2d 1233, 1237 (M.D.Ala.1999). Defendant attempts to mitigate this inference of discrimination by contending that negative documentation was not customarily placed in the personnel files of employees who worked in the personnel office because of potential "morale problems." (Def.'s Repl. Br. at 12.) Furthermore, Defendant claims that Blake documented Plaintiff's employment problems prior to the time of her termination. (*Id.*; Blake Aff. ¶ 5.) However, Blake cannot produce this documentation because it is "missing" from his desk. (Blake Aff. ¶ 5.) Thus, the fact remains that Plaintiff's employment was terminated without any supporting documentation presently before the court.

(Blake Aff. ¶ 5.) Accordingly, the court finds that Defendant's attempts to mitigate the inference of discrimination are rather suspect and give rise to an issue of fact regarding pretext.

Furthermore, the close temporal proximity between the date when Plaintiff complained to Blake about the alleged disparate treatment—January 29, 1997—and the date when Blake fired Plaintiff without any supporting documentation—January 31, 1999—leads the court to conclude that another genuine issue of material fact exists regarding pretext. In support of this conclusion, the court notes a factually similar case in which a Title VII plaintiff was fired approximately one month after she had complained of sexual harassment. *Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312 (M.D.Ala.1998). The *Swanson* court found that:

> the timing, coupled with the fact that [plaintiff's] protected activity was an internal grievance complaining of unlawful harassment, against her, by the very person who fired her, was enough to show a material question of fact as to whether [the defendant's] proffered non-discriminatory reason was pretext for retaliation.

*Id.* at 1336. Based on the foregoing, the court finds that the undisputed fact that Plaintiff was terminated by Blake, without supporting documentation, just two days after she complained to him about the alleged disparate treatment creates genuine issues of material fact as to whether the non-discriminatory justifications for Plaintiff's termination proffered by Defendant are merely pretext for unlawful discrimination. Accordingly, summary judgment is due to be denied as to Plaintiff's retaliation claim.

## IV. Disparate Treatment Regarding Events That Transpired Prior To 1997

■ Defendant argues that Plaintiff's claims regarding events that transpired prior to 1997 are barred because they did not occur within 180 days of the filing of her EEOC charge. (Def.'s Br. at 27;

Def.'s Repl. at 19.) The court notes that Title VII permits an aggrieved employee to seek relief in federal court only where the plaintiff (1) has filed timely charges with the EEOC and (2) has received and acted upon the EEOC's statutory notice of right-to-sue. *See* 42 U.S.C. § 2000e–5(f)(1); *McDonnell–Douglas*, 411 U.S. at 798, 93 S.Ct. 1817. The plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discrimination. *See* 42 U.S.C. § 2000e–5(e). If the plaintiff fails to file before this time elapses, the plaintiff's claim is untimely and is therefore procedurally barred for failure to exhaust her administrative remedies. *See Delaware State College v. Ricks*, 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir.1998).

In this case, Plaintiff filed her EEOC charge on February 4, 1997. Plaintiff concedes that all of her claims of alleged disparate treatment, other than her 1997 claim regarding disputed travel pay, are "not actionable in this case because they were not administratively pursued through previous complaints." (Pl.'s Resp. at 22.) Therefore, based on Plaintiff's concession, the court finds that Plaintiff's claims regarding events that transpired prior to 1997 are due to be dismissed as a matter of law because they were filed outside of the 180 day time period.[15]

## V. Pattern And Practice Of Sex Discrimination

 Plaintiff contends that during her "years of work with [Defendant], she wit- nessed a pattern and practice of sex discrimination with respect to the unfair treatment women received." (Compl. at 3.) Although the Parties have not addressed this claim in detail, the court notes that Plaintiff is not authorized by Title VII to bring a pattern and practice claim as a separate cause of action. *See* 42 U.S.C. § 2000e–6(a) et. seq. Title VII confers specific authority to bring pattern and practice actions upon the EEOC, and upon the Attorney General of the United States in certain instances, but not upon private-sector litigants. *See* 2 Arthur Larson & Lex K. Larson, Employment Discrimination: Procedures & Remedies § 48.42(a); *see also* 42 U.S.C. § 2000e–6(e). However, some courts have allowed private-sector litigants to bring pattern and practice claims as part of a class action lawsuit. *See,* e.g., *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1559 (11th Cir.1986); *Sledge v. J.P. Stevens & Co.*, 585 F.2d 625, 637 (4th Cir.1978). Yet, "neither Congress nor the courts have allowed individual private plaintiffs to avoid application of the *McDonnell Douglas* criteria by invocation of a pattern and practice theory." *NAACP Labor Committee of Front Royal, Virginia v. Laborers' Int'l Union of N. Am.*, 902 F.Supp. 688, 712 (W.D.Va.1993). In other words, a pattern and practice claim is not a separate cause of action available to a private, individual plaintiff that would alleviate the need to prove individual discrimination under the *McDonnell Douglas* framework. *See Scarlett v. Seaboard Coast Line R.R.*, 676 F.2d 1043, 1053 (5th Cir. Unit B 1982)[16] (rejecting

---

15. The court notes that while Plaintiff concedes that her pre–1997 claims are time-barred, she attempts to offer these claims as evidence of pretext and as evidence of pattern and practice of discrimination. (Pl.'s Resp. at 22.) The court has previously addressed this matter to the extent that these claims are offered to show pretext. *See* supra note 9 and accompanying text. To the extent that these claims are offered to show a pattern and practice of discrimination, the court addresses this matter in the following section. *See* infra § 5.

16. In *Stein v. Reynolds Securities, Inc.*, the Eleventh Circuit adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. 667 F.2d 33, 34 (11th Cir.1982). *Cf. Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit hand down prior to the close of business on September 30, 1981).

plaintiffs' suggestion that they could use evidence of systematic discrimination alone to prove instances of individual discrimination, reasoning that individuals proceeding on circumstantial evidence of discrimination under Title VII must prove the elements of a discrimination claim as set forth in *McDonnell Douglas*). Therefore, based on the foregoing, Plaintiff's pattern and practice claim is due to be dismissed as a matter of law.

## VI. Hostile Work Environment

In her Complaint, Plaintiff includes the words "hostile work environment." (Compl. at 3.) However, in her Response, Plaintiff concedes that she "does not attempt to create or raise a hostile work environment [claim] in her lawsuit." (Pl.'s Resp. at 23.) Therefore, based on Plaintiff's concession, the court finds summary judgment is due to be granted as to Plaintiff's apparent claim of hostile work environment.

## VII. Damages

Plaintiff contends that she is entitled to "compensatory and punitive damages in such sums as the jury may award, including any and all equitable relief, attorney's fees and cost." Defendant asserts that "the evidence does not support such a claim, citing *Kolstad v. American Dental Ass'n*, 139 F.3d 958 (D.C.Cir.1998), which held that Congress intended to reserve punitive damages only for 'particularly egregious' conduct." (Def.'s Repl. at 20.) However, given that genuine issues of material fact still exist in this case, the court finds that Plaintiff's damage claims are better determined by a jury than by this court on summary judgment. Therefore, summary judgment is due to be denied as to Plaintiff's claims for damages.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED with respect to Plaintiff's claim of disparate treatment regarding disputed travel pay.

2. GRANTED with respect to Plaintiff's claim of discriminatory discharge.

3. DENIED with respect to Plaintiff's claim of retaliation.

4. GRANTED with respect to Plaintiff's claim of disparate treatment regarding events that transpired prior to 1997.

5. GRANTED with respect to Plaintiff's claim of pattern and practice of sex discrimination.

6. GRANTED with respect to Plaintiff's claim of hostile work environment.

7. DENIED with respect to Plaintiff's claim for damages.